# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANNEL PARTNERS CAPITAL, LLC d/b/a Channel Partners Equipment Finance, | : : : | No. 1:24-cv-01637 |
| Plaintiff | : : | (Judge Kane) |
| v. | : : | |
| SHAFER EQUIPMENT CO. d/b/a SHAFER EQUIPMENT RENTAL and TRAVIS SHAFER, | : : : : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is Channel Partners Capital, LLC ("Plaintiff")'s motion for default judgment against Defendant Travis Shafer ("Defendant Shafer"). (Doc. No. 11.) As Defendant Shafer has yet to appear or defend in this action, no opposition to the motion has been filed. For the reasons that follow, the Court will grant the motion in part and deny it in part and enter default judgment in favor of Plaintiff and against Defendant Shafer.

**I.      BACKGROUND**

On September 26, 2024, Channel Partners Capital, LLC ("Plaintiff") initiated the instant action against Defendant Shafer Equipment Co. ("Defendant Company") and Defendant Shafer. (Doc. No. 1.) The complaint alleges breach of contract against Defendant Company and breach of guaranty against Defendant Shafer. (Id.) Plaintiff is a Delaware limited liability company with its principal place of business in Minnesota that provides equipment financing to businesses. (Doc. No. 1 at 1.) Defendant Company is a Pennsylvania corporation organized under the laws of the Commonwealth, and Defendant Shafer serves as the President of Shafer Equipment Co. (Doc. Nos. 1-2 through 1-5 at 2.)

According to the complaint and exhibits thereto, Plaintiff and Defendant Company entered into a series of four Equipment Finance Agreements (collectively referred to as "Agreements"), all of which contained a signed guaranty by Defendant Shafer.  (Doc. Nos. 1-2 through 1-5 at 2.)   On November 10, 2022, Plaintiff and Defendant Company executed a Master Equipment Finance Agreement ("Agreement 635"), wherein Defendant Company agreed to make forty-eight (48) monthly payments of $1,486.05.  (Doc. No. 1 at ¶ 11.)  On November 16, 2022, Plaintiff and Defendant Company executed another Master Equipment Finance Agreement ("Agreement 638"), wherein Defendant Company agreed to make forty-eight (48) monthly payments of $845.85.  (Doc. No. 1 at ¶ 12.)  On December 19, 2022, Plaintiff and Defendant Company executed another Master Equipment Finance Agreement ("Agreement 504"), wherein Defendant Company agreed to make forty-eight (48) monthly payments of $1,044.10.  (Doc. No. 1 at ¶ 13.)  Finally, on December 20, 2022, Plaintiff and Defendant Company executed another Master Equipment Finance Agreement ("Agreement 498"), wherein Defendant Company agreed to make forty-eight (48) monthly payments of $713.69.  (Doc. No. 1 at ¶ 14.)

Plaintiff's complaint asserts in Count I that Defendant Company breached each of the Agreements by failing to make the full forty-eight (48) monthly payments.  (Doc. No. 1 at ¶¶ 14–18.)  As of August 14, 2024, the outstanding balances are as follows: $52,579.93 for Agreement 635, $29,161.26 for Agreement 638, $18,911.21 for Agreement 504, and $23,776.33 for Agreement 498.  (Id.)  Plaintiff claims in Count II that Defendant Shafer breached the guaranties by failing to satisfy Defendant Company's obligations under the loan agreements.

On October 30, 2024, a suggestion of bankruptcy was filed for Defendant Company, extending an automatic stay of proceedings against Defendant Company.[1]  (Doc. No. 6.)  The bankruptcy proceedings are before Chief Judge VanEck, in the United States Bankruptcy Court for the Middle District of Pennsylvania.  See In Re: Shafer Equipment Co., LLC, No. 1:24-bk-02730-HWV (Bankr. M.D. Pa. filed Oct. 30, 2024).  On November 20, 2024, the Chapter 7 trustee filed a report of no distribution with the bankruptcy court, indicating that there are no assets to distribute to creditors from the estate.  See id. at ECF No. 7.  On April 9, 2025, the bankruptcy court entered a final decree on Defendant Company's bankruptcy proceedings.  See id. at ECF No. 16.

Defendant Shafer has not answered the summons, entered an appearance, or responded in any way to the complaint since service was completed on October 7, 2024.  On November 1, 2024, upon Plaintiff's request (Doc. No. 7), the clerk entered a default against Defendant Shafer (Doc. No. 8).

Plaintiff filed a motion for default judgment against Defendant Shafer on November 4, 2024, for breach of guaranty, seeking $124,428.73 in damages, plus an additional $43,550.00 for costs and attorney's fees.  (Doc. No. 11.)

## II.     LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure.  An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b).  See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to

---

[1] This stay, however, does not extend to non-debtors, such as guarantors like Defendant Shafer.  By its terms, § 362(a) stays actions only against the "debtor."  See McCartney v. Integra Natal Bank North, 106 F.3d 506, 509 (3d Cir. 1997).

obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)"). Once the Clerk of Court has entered a default, the party seeking the default may then move the Court to enter a default judgment under Rule 55(b)(2). Entry of default does not entitle a claimant to default judgment as a matter of right. See 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender 3d ed. 2010). Rather, decisions relating to the entry of default judgments are committed to the sound discretion of the district court. See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the Court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)). If, however, the defendant has been properly served but fails to appear, plead, or defend an action, a court may "enter a default judgment based solely on the fact that the default occurred," without considering the Chamberlain factors. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990). This Court has found "[w]hen a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment under Rule 55(c)." See Deutsche Bank Nat. Trust Co. v. Strunz, No. 1:12-cv-01678, 2013 WL 122644, at *1 (M.D. Pa. 2013) (unpublished).

"A finding that default judgment is appropriate, however, is not the end of the inquiry". See Martin v. Nat'l Check Recovery Servs., LLC, No. 12-cv-01230, 2016 WL 3670849, at *1

(M.D. Pa. July 11, 2016).  Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action."  See Wright, et al., supra, at § 2688; Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (noting that, "before granting a default judgment," courts must "ascertain whether the unchallenged facts constitute a legitimate cause of action since a party in default does not admit mere conclusions of law" (citations omitted)).  In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they were established by proof."  See E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted).  While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

**III.   DISCUSSION**

Having reviewed the record, including Plaintiff's complaint, motion, exhibits, and accompanying affidavits, the Court finds that entry of default judgment against Defendant Shafer and in favor of Plaintiff is appropriate.  As an initial matter, the Court observes that Plaintiff's unchallenged allegations in the complaint, taken as true, state a legitimate cause of action for breach of guaranty against Defendant Shafer.

In its complaint, Plaintiff fails to address which jurisdiction's law applies to its breach of guaranty claim.  However, the Equipment Finance Agreements from which this dispute arises contain a choice-of law-clause. (Doc. Nos. 1-2 through 1-5 at ¶ 6.)  This clause provides that "[t]his EFA is governed by, interpreted, construed and enforced in accordance with the laws of

the State of Minnesota or if the EFA is assigned, the laws of the Assignee's principal place of business, without regard to the conflict-of-laws principles thereof." (Id.)

The Third Circuit has held that in diversity cases such as this one, the court must look to the choice-of-law rules of the forum state—the state in which the district court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause. See Collins On behalf of herself v. Mary Kay, Inc., 874 F.3d 176, 183 (3d Cir. 2017) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), which held that a federal court sitting in diversity must apply the choice-of-law rules of the forum state); see also Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994) (applying Pennsylvania's choice-of-law rules in a diversity case, despite the presence of choice-of-law clause selecting Illinois law, and concluding that Illinois law governs the interpretation of the indemnity clause of a lease agreement).

Pennsylvania courts generally honor the intent of the contracting parties and enforce choice-of-law provisions in contracts executed by them. See Kruzits, 40 F.3d at 55 (citing Smith v. Commonwealth Nat. Bank, 557 A.2d 775, 777 (Pa. Super. Ct. 1989), appeal denied, 569 A.2d 1369 (Pa. 1990)).

Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which provides that:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. . . .

See, e.g., Schifano v. Schifano, 471 A.2d 839, 843 n.5 (Pa. Super Ct. 1984) (citing with approval the Restatement (Second) Conflict of Laws).

In this case, paragraph six (6) of the EFA agreements specifically provides that the agreements will be governed and construed in all respects by the laws and decisions of the State of Minnesota. (Doc. Nos. 1-2 through 1-5 at ¶ 6.)

Under Minnesota law, a guaranty is "a collateral contract to answer for the payment of a debt or the performance of a duty in case of the default of another who is primarily liable to pay or perform the same." See Charmoll Fashions, Inc. v. Otto, 248 N.W.2d 717, 719 (Minn. 1976) (citing to Schmidt v. McKenzie, 9 N.W.2d 1, 3 (Minn. 1943)). A guaranty agreement is interpreted and enforced in the same manner as other contracts. See American Tobacco Co. v. Chalfen, 108 N.W.2d 702, 704 (Minn. 1961). Accordingly, to prove a breach-of-guaranty claim, a plaintiff first must prove the "formation of a contract" to guarantee the debt of another. See S. M. Hentges & Sons, Inc. v. Mark Elliot Homes, LLC, No. 22-cv-00736, 2023 WL 125847, at *4 (Minn. Ct. App. 2023).

Furthermore, the elements of a breach of contract claim under Minnesota law are similar to Pennsylvania. A successful breach-of-contract claim under Minnesota law has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages. See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd., 703 F.3d 1104, 1107 (8th Cir. 2013).

To state a claim for breach of contract under Pennsylvania law, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the

contract; and (3) resultant damages.  See Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).  Pennsylvania courts will only ignore a contractual choice-of-law provision if that provision conflicts with strong public policy interests.  See, e.g., Soxman v. Goodge, 539 A.2d 826 (Pa. Super Ct.1988); Leidy v. Deseret Enterprises, Inc., 381 A.2d 164 (Pa. Super. Ct. 1977).

Here, the agreement between Plaintiff and Defendant Company is a freely negotiated financing contract between two commercial entities guaranteed by Defendant Company's President, Defendant Shafer.  In this case, there is no indication that any strong public policy issues are infringed by following Minnesota's law.  Additionally, Plaintiff has its principal place of business in Minnesota, showing a relationship between Minnesota and the transaction.

Plaintiff has provided copies of each of the Agreements, all of which bear the signature of Defendant Shafer as guarantor, indicating his liability for any amounts owed should Defendant Company default.  Plaintiff has also submitted statements detailing the balances due for each of these agreements.  (Doc. Nos. 1-2 through 1-5 at 2.)  For Agreement 635, Defendant Company was required to make forty-eight (48) monthly payments of $1,486.05, but only twelve (12) payments were made, leaving a remaining balance of $52,579.93.  (Doc. No. 1-6.)  In Agreement 638, Defendant Company was to make forty-eight (48) monthly payments of $845.85, but only thirteen (13) payments were made, resulting in a remaining balance of $29,161.26.  (Doc. No. 1-7.)  For Agreement 504, Defendant Company was also to make forty-eight (48) monthly payments of $1,044.10, yet only thirteen (13) payments were made, leaving a remaining balance of $18,911.21.  (Doc. No. 1-8.)  Finally, in Agreement 498, Defendant Company was required to make forty-eight (48) monthly payments of $713.69; the statement indicates that only twelve (12) payments were made, resulting in a remaining balance of $23,776.33.  (Doc. No. 1-9.)  In each of these agreements, it is stipulated that, should Defendant Company default, Plaintiff may

recover interest at a rate of 18% per annum. Relying upon the described documents, Plaintiff claims damages of $124,428.73 for the breach of guaranty.

Plaintiff's allegations and exhibits unequivocally establish that: (1) Plaintiff and Defendant Company entered into four financing agreements; (2) Plaintiff financed equipment for Defendant Company in exchange for set monthly payments; (3) Defendant Shafer signed a guaranty for each of these agreements; and (4) Defendant Company defaulted on each of these agreements when it stopped making the monthly payments and failed to pay the remaining amount of $124,428.73 under those agreements. Based on Plaintiff's affidavit and attached exhibits, Plaintiff has established a legitimate cause of action for breach of guaranty.

Next, the Chamberlain factors weigh in favor of granting a default judgment. First, there is a risk of prejudice to Plaintiff if default is denied, as Plaintiff is owed $124,428.73 for the equipment that Defendant Shafer personally guaranteed and the loan agreements have been in default for over a year. (Doc. No. 1 at 4.) Second, Defendant Shafer has not asserted any defense, either by answering the allegations of the complaint or by opposing the present motion for default judgment. Finally, there appears to be no excuse or reason for Defendant Shafer's default other than Defendant Shafer's own culpability. Plaintiff has shown that Defendant Shafer was served with all of the required documents. Despite this fact, Defendant Shafer has neither engaged in the litigation process nor offered any reason for his failure to appear.

Accordingly, the Court is satisfied that the Chamberlain factors counsel in favor of entering default judgment in favor of Plaintiff and will therefore grant Plaintiff's motion for default judgment. However, as noted supra, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages. See Comdyne I, Inc, 908 F.2d at 1149. Minnesota law allows for the recovery of damages resulting from a breach of

contract. The general guideline for calculating these damages is to determine the amount needed to put the non-breaching party in the same position they would have been in had the contract been fully performed. See Peters v. Mutual Benefit Life Ins. Co., 420 N.W.2d 908, 915 (Minn. Ct. App. 1988); Sprangers v. Interactive Technologies, Inc., 394 N.W.2d 498, 503–04 (Minn. Ct. App. 1986), rev. denied (Minn. Nov. 19, 1986) (quoting Paine v. Sherwood, 21 Minn. 225, 232 (1875)). Plaintiff has substantiated the amount of $124,428.73 in damages owed for the breach of guaranty through the exhibits submitted in connection with the motion and its complaint. However, Plaintiff also requests attorney's fees in the amount of $43,550.00.

The Third Circuit has stated that: "[i]n diversity cases, we apply state rules concerning the award of attorney's fees." See Sec. Mut. Life Ins. Co. of N.Y., 979 F.2d 329, 331–32, (3d Cir. 1992). As noted, the Court's jurisdiction in the present case is based on diversity. (Doc. 1 at 1 ¶ 4). Therefore, because this dispute is governed by Minnesota state law, Minnesota law applies to an award of attorney's fees in the present case.

Minnesota follows the same approach to the recovery of attorney's fees as Pennsylvania, which is the general American rule that there can be no recovery of attorney's fees from an adverse party, absent express statutory authorization, a clear agreement by the parties, or some other established exception. See Gold Star Feed & Grain, LLC v. Ulster Dairy, LLC, No. 4:23-cv-01942, 2024 WL 733634, at *5 (M.D. Pa. Feb. 22, 2024) (stating "Pennsylvania law does not allow awards for attorney['s] fees in suits for ordinary breach of contract . . . unless there is express statutory authorization, a clear express agreement of the parties[,] or some other established exception"); Dunn v. Nat'l Beverage Corp., 745 N.W.2d 549, 554 (Minn. 2008) (stating "the general rule in Minnesota is that 'attorney fees are not recoverable in litigation

10

unless there is a specific contract permitting or a statute authorizing such recovery'" (citation omitted)).

Here, there is a clear agreement between the parties to provide for the payment of Plaintiff's attorney's fees. Plaintiff and Defendant Company executed four agreements, all of which contain the following fee-shifting language: "You agree to pay our reasonable attorney's fee (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs including any collection agency fee." (Doc. Nos. 1-2 through 1-5 ¶ 12.) Plaintiff has requested an amount equal to 35% of the actual damages from the default on the contract. In assessing attorney's fees, courts typically apply either the percentage-of-recovery method or the lodestar method. See Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 244 (8th Cir. 1996).[2] In fee-shifting, as in the Agreements in this case, the lodestar method is preferred. See id. The percentage-of-recovery method is generally favored in common fund cases. See id.

In breach of contract cases, the lodestar method is applied to determine the reasonableness of attorney's fees. See, e.g., MVP Logistics, LLC v. FDG Express, LLC, No. 22-cv-00686, 2022 WL 7420182, at *4 (D. Minn. Oct. 13, 2022) (applying lodestar to calculate reasonable attorney's fees in an order granting default judgment for a breach of contract); Gold Star Feed & Grain, 2024 WL 733634, at *5 (requiring the plaintiff to provide additional evidence

---

[2] The court in Johnston discusses the application of lodestar versus the percentage of recovery method under Minnesota law. See Johnston, 83 F.3d at 244. In its discussion, the court specifically points to a Third Circuit Task Force Report dated October 8, 1985. See id. (citing Court Awarded Attorney Fees, Report of the Third Circuit Task Force (Arthur R. Miller, Reporter), 108 F.R.D. 237). The court noted that the Task Force notes that the lodestar and the percentage of the benefit methods have distinct attributes that make them suitable for particular types of cases. See id.

11

to demonstrate that the requested attorney's fees were reasonable in connection with a default judgment for a breach of contract claim, where the defendant defaulted on invoices totaling over $140,000.00); T & C Leasing Inc. v. BBMC, LLC, No. 1:09-cv-00873, 2010 WL 231128, at *3 (M.D. Pa. Jan. 14, 2010) (requiring more evidence to determine the reasonableness of requested attorney's fees through a lodestar calculation). Given that breach of guaranty is interpreted and enforced the same as breach of contract, the lodestar method would apply to Plaintiff's claim of breach of guaranty and its request for reasonable attorney's fees.[3]

Here, Plaintiff provides insufficient evidence for the Court to determine if its requested fees are reasonable through the lodestar method. In assessing a request for attorney's fees, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Performing this calculation will provide the "lodestar" figure, which is presumed to be the reasonable amount of fees for the matter. See id. The party seeking the attorney's fees has the burden of proving that the requested attorney's fees are reasonable, which initially requires the fee petitioner to "submit evidence supporting the hours worked and the rates claimed." Id. Under Minnesota law, the party requesting reasonable attorney's fees must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." See Madison v. Willis, No. 09-cv-00930, 2011 WL 851479, at *1 (D. Minn. Mar. 9, 2011) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). "A rate determined this way is normally deemed to be

---

[3] Plaintiff assumes that the percentage of recovery method would apply to determine the amount of attorney's fees, but has not offered any authority in support, nor has the Court located any authority to support this assumption.

reasonable." See id.  Where a party fails to provide sufficient information to substantiate their claim for attorney's fees, the court does not abuse its discretion in denying those fees.  See Carlson v. SALA Architects, Inc., 732 N.W.2d 324, 331–32 (Minn. Ct. App. 2007).  Even when attorney's fees may be allowed, there must still be a showing as to their reasonableness and connection to the litigation.  See id.

Here, Plaintiff's counsel, in justification of Plaintiff's requested attorney's fees, has only provided that he entered into a contingency fee agreement with Plaintiff for 35% of the recovered amount and a signed affidavit that he believes 35% to be reasonable based on his twenty years (20) of experience performing collections work in Pennsylvania.  (Doc. No. 11-4 at 2.)  Plaintiff does not provide an hourly rate, the number of hours spent or expected to be spent on the matter, or the tasks completed during those hours.  Therefore, Plaintiff has failed to provide sufficient information to substantiate its claim for attorney's fees.

Although Plaintiff has not adequately supported its claim for the requested amount of attorney's fees, a hearing under Rule 55(b)(2)(B) is unnecessary to determine the amount of attorney's fees due, as the requested amount will likely be computable from proper documentary evidence.  See Deutsche, 2013 WL 122644, at *3 ("[the 'hearing' may be one in which the court asks the parties to submit affidavits and other materials from which the court can decide the issue") (citing 10 James Wm. Moore et al., Moore's Federal Practice § 55.32[2][c] (Matthew Bender 3d ed. 2010)).  In Gold Star Feed & Grain, another judge of this Court granted in part and denied in part a motion for default judgment in a breach of contract case because the attorney did not provide enough information to support the requested attorney's fees.  See Gold Star Feed & Grain, LLC, 2024 WL 733634, at *5.  The Court allowed for the recovery of contractual damages but denied the requested attorney's fees, stating that "should Plaintiff care to recover

13

the attorney's fees it is entitled to under the contracts, it will need to submit a supplemental request with sufficient documentation to justify its demand." See id. Because Plaintiff has not submitted evidence demonstrating that its requested amount of attorney's fees is reasonable, Plaintiff will be required to submit further evidence supporting its claimed attorney's fees should it wish to recover them.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Plaintiff's motion for default judgment. (Doc. No. 11.) Specifically, the Court will grant Plaintiff's motion to the extent it seeks $124,428.73 in damages plus interest against Defendant Shafer and will deny Plaintiff's motion to the extent it seeks $43,550.00 in attorney's fees. Should Plaintiff care to recover attorney's fees under the contracts, it will need to submit a supplemental request with sufficient evidence supporting the reasonableness of the hours worked and the rates claimed. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania